# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Theo Smith,
                                          Civ. No. 08-5324 (ADM/JJK)

        Plaintiff,

v.
                                          **ORDER AND REPORT**
Ghana Commercial Bank, Ltd., and          **AND RECOMMENDATION**
The Republic of Ghana,

        Defendants.

## INTRODUCTION

This matter is before this Court for a report and recommendation on
Plaintiff's Motion for Entry of Default and Default Judgment (Doc. No. 5), and
Defendant's Motion to Dismiss (Doc. No. 19). *See* 28 U.S.C. § 636 and D. Minn.
Loc. R. 72.1. This matter is also before the Court on Plaintiff's Motion to
Disqualify Opposing Counsel (Doc. No. 30), and Motion to Include Evidence to
Disqualify Opposing Counsel (Doc. No. 47). For the reasons that follow, this
Court denies Plaintiff's disqualification motions and recommends that Plaintiff's
default-judgment motion be denied, Defendants' dismissal motion be granted,
and this action be dismissed with prejudice.

## BACKGROUND

### The Complaint

The Complaint in this matter, as best as this Court can discern, sets forth
the following allegations. Plaintiff alleges that in September 1999, monetary

consignments, possibly in the form of defaced currency (*see* Doc. No. 1, ¶ 11), from the sale of diamonds, gems, and precious minerals arrived in Ghana.  (*Id.* ¶ 12.)  Plaintiff alleges that he inspected the money and/or consignments and brought a sample back to the United States to have it examined by the United States Secret Service; the Secret Service determined that it was genuine.  (*Id.*)

Plaintiff alleges that in April 2001, he contacted a "certified zonal agent" named "Tony" to complete paperwork for the requisition of equipment and supplies to process the defaced currency.  (*Id.* ¶ 14.)  Plaintiff asserts that he paid $75,000 to Tony for this processing and requisition.  (*Id.*)  Apparently, Plaintiff "allow[ed] Tony to take ownership documents of the consignment" (*Id.* ¶ 18), who then used force to seize the consignment of defaced currency in an attempt to extort Plaintiff.  (*Id.* ¶ 21.)

Months later, someone named "Mr. Robert," who is apparently part of "the government and who is a mid-level operational manager for United Assets, asked if Plaintiff had encountered a problem with his currency assets."  (*Id.* ¶ 22.)  Plaintiff explained to Mr. Robert that Tony had seized the consignment (*Id.*), and Mr. Robert apparently contacted Tony regarding the consignment.  (*Id.* ¶ 23.)  Tony then brought the consignment to Mr. Robert's office, which office allegedly "is the property of the national government of Ghana[,]" where Plaintiff and Mr. Robert inspected the consignment before Mr. Robert signed a paper giving Plaintiff custody over it.  (*Id.* ¶¶ 23-24.)  Mr. Robert then delivered the consignment to Defendant Ghana Commercial Bank's ("GCB") vault.  (*Id.* ¶ 25.)

Plaintiff then met with Mr. Robert and "an executive from Ghana Commercial Bank[,]" apparently someone named "Dr. Williams[,]" regarding release of the funds, but to no avail. (*Id.* ¶ 26.) Some eleven months later, "Plaintiff received communication from Royal Crown Securities and Deposits, an account facility for holding funds, along with a bank deposit receipt proving that over twenty million dollars had been deposited with Ghana Commercial Bank[.]" (*Id.* ¶ 27.) Plaintiff apparently made further efforts to obtain release of the funds, including several visits to GCB, but never received the consignment. (*Id.* ¶¶ 28-30.) The facts alleged by Plaintiff end abruptly at this point. Plaintiff seeks judgment in the amount of $18 million, accumulated interest, statutory treble damages, and court costs and reasonable legal fees. (*Id.* at 14.)

**Procedural History**

Plaintiff filed his Complaint on October 1, 2008.[1] (Doc. No. 1.) On March 24, 2009, after filing a Certificate of Service (Doc. No. 4), Plaintiff moved for default judgment. (Doc. No. 5.) On April 3, 2009, this Court issued an Order to Show Cause why this case should not be dismissed for failure to comply with the Federal Rules of Civil Procedure and 28 U.S.C. § 1608, regarding service of

---

[1]     On March 7, 2007, Plaintiff filed a lawsuit against these same Defendants making substantially similar allegations to those raised in the current Complaint. *See Smith v. Ghana Commercial Bank and The Republic of Ghana*, Civ. No. 07-1447 (DWF/AJB) (D. Minn. filed Mar. 7, 2007). On June 11, 2008, that case was dismissed without prejudice for lack of personal jurisdiction. (Doc. No. 22, Decl. of Juan C. Basombrio, Esq. ("Basombrio Decl.") ¶ 2, Ex. 1.)

process, and for failure to prosecute.  (Doc. No. 10.)  On April 29, 2009, Plaintiff responded to the show-cause Order.  (Doc. No. 11.)

On June 2, 2009, Defendants filed a Request for Continuance and Notice of Limited Appearance, seeking to continue the hearing on Plaintiff's default-judgment motion and indicating that they did not intend to waive any defenses by their appearance.  (Doc. No. 14.)  On June 3, 2009, this Court granted Defendants' request in part.  (Doc. No 15.)  Thereafter, Defendants filed a response to Plaintiff's default-judgment motion (Doc. No. 17, Defs.' Opp'n to Pl.'s Mot. for Entry of Defaults and Default J. ("Def's Default Opp'n")), and a Motion to Dismiss (Doc. No. 19).  After briefing on the Motion to Dismiss was completed, the hearings on these motions were consolidated.  (Doc. No. 46.)

On June 22, 2009, while these motions were pending, Plaintiff filed a Motion to Disqualify Opposing Counsel, based on allegations that he had previously sent the law firm of Dorsey & Whitney, LLP, counsel for Defendants, documents related to this case in an attempt to obtain their representation.  (Doc. No. 30)  Defendants responded to this motion generally denying that any attorney-client relationship existed with Plaintiff.  (Doc. No. 38.)  Following this response and the filing of supporting declarations, Plaintiff made a Motion to Include Evidence to Disqualify Opposing Counsel, which alleged that Defendants' opposition to the disqualification motion was insufficient.  (Doc. No. 47)  Plaintiff attached an email to that motion to demonstrate his prior relationship with the Dorsey & Whitney firm.  (*Id.* at 7.)  Defendants opposed this

second motion noting that it was not compliant with the Local Rules and insisting that no attorney-client relationship was ever formed with Plaintiff. (Doc. No. 50.)

## DISCUSSION

### I.    Plaintiff's Disqualification Motions

The basis for Plaintiff's motion to disqualify opposing counsel is not entirely clear, although he refers to a "presumption of imputed knowledge and appearance of impropriety" and the existence of "Plaintiff's attorney-client relationship with Dorsey & Whitney." (Doc. No. 30, Attach. 1, ¶ 12.) It appears to this Court that Plaintiff is attempting to disqualify the Dorsey & Whitney firm based on an alleged conflict resulting from a former attorney-client relationship with the Dorsey & Whitney firm on a related matter.

The professional conduct of attorneys licensed to practice in this District is governed by the Minnesota Rules of Professional Conduct. D. Minn. Loc. R. 83.6(d)(2). Minnesota Rule of Professional Conduct 1.9 provides that "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing." Minn. R. Prof'l Conduct 1.9(a). "The purpose of disqualification under this rule 'is to ensure the attorney's absolute fidelity and to guard against inadvertent use of confidential information.'" *Stockwalk Group, Inc. v. Taylor*, No. A06-1971, 2007 WL 2417153, at *3 (Minn. Ct. App. Aug. 28, 2007) (quoting *Nat'l Texture Corp. v.*

5

*Hymes*, 282 N.W.2d 890, 894 (Minn.1979)).   "One who seeks to disqualify counsel under [Minn. R. Prof'l Conduct 1.9] must show that: 1) the moving party and opposing counsel actually had a prior attorney client relationship; 2) the interests of opposing counsel's present client are adverse to the movant; and 3) the matters involved in the present underlying lawsuit are substantially related to the matters for which the opposing counsel previously represented the moving party."  *Bieter Co. v. Blomquist*, 132 F.R.D. 220, 223 (D. Minn. 1990) (citing *Fed. Deposit Ins. Corp. v. Amundson*, 682 F. Supp. 981, 986 (D. Minn. 1988)).   "Once the moving party has established these three elements, 'a presumption arises that confidences of the movant-client were disclosed to the attorney in the course of the prior representation, confidences which the attorney might use to the detriment of the movant in the current action.'"  *Amundson*, 682 F. Supp. at 986 (citing *Black v. State of Mo.*, 492 F. Supp. 848, 863 (W.D. Mo. 1980)).

This Court concludes that Plaintiff has not made a sufficient showing that he and opposing counsel actually had a prior attorney-client relationship.  To demonstrate that a prior attorney-client relationship existed between himself and opposing counsel, Plaintiff attached an email to his Motion to Include Evidence to Disqualify Opposing Counsel (Doc. No. 47, Attach. 1; *see also* Doc. No. 48, Decl. Theo Smith ("Smith Decl.") ¶¶ 2, 6), which indicates that in January 2007, Plaintiff

sent copies of documents related to a case involving the Republic of Togo[2] to

Mr. Surya Saxena, an attorney with the Dorsey & Whitney firm. Mr. Saxena

replied to Plaintiff's email by stating, "Please give me a call to discuss." (*Id.*)

This, standing alone, is insufficient to establish that a prior attorney-client

relationship existed. "The question of whether an attorney-client relationship

exists can be determined by evidence of an implied contract or by the use of a

tort or third-party beneficiary analysis." *Admiral Merchs. Motor Freight, Inc. v.

O'Connor & Hannan*, 494 N.W.2d 261, 265 (Minn. 1992). Plaintiff presents no

such evidence that he had reached an agreement or had an implied contract with

Mr. Saxena or Dorsey & Whitney. Nor has he shown that he received legal

advice from Mr. Saxena "in circumstances in which a reasonable person would

rely on such advice." *See id.* at 266 (citing *Togstad v. Vesely, Otto, Miller &

Keefe*, 291 N.W.2d 686, 692-93 (Minn. 1980)).

 Because Plaintiff has failed to provide evidence that an attorney-client

relationship exists, this Court denies both his Motion to Disqualify Opposing

Counsel (Doc. No. 30), and his Motion to Include Evidence to Disqualify

Opposing Counsel (Doc. No. 47).

---

[2]  Although this Court denies Plaintiff's disqualification motions because he
has failed to show the existence of a prior attorney-client relationship, this Court
has serious doubts whether Plaintiff could establish that this case is "substantially
related" to any prior representation concerning the Republic of Togo, a
completely different African country than that involved here, and the subject of a
different lawsuit filed by Plaintiff in 2007. *Smith v. Gnassingbe*, Civ. No. 07-4167
(ADM/JJK) (D. Minn. filed Oct. 3, 2007).

## II.	Motion for Default Judgment

### A.	Legal Standard

Plaintiff moves for an entry of default judgment under Federal Rule of Civil Procedure 55.  According to Rule 55, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules, and the fact is made to appear by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  "A Judgment of default may, thereafter, be entered on application to the Court."  *Semler v. Klang*,  603 F. Supp. 2d 1211, 1218 (D. Minn. 2009) (citing Fed. R. Civ. P. 55(b) and *Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 783 (8th Cir. 1998) ("When a party 'has failed to plead or otherwise defend' against a pleading listed in Rule 7(a), entry of default under Rule 55(a) must precede grant of a default judgment under Rule 55(b).")).  Whether to enter a default rests within the court's discretion.  *Lee v. Bhd. of Maint. of Way Employees-Burlington N. Sys. Fed'n*, 139 F.R.D. 376, 381 (D. Minn. 1991).  "When determining whether a Default Judgment is appropriate, the Court must consider whether the assertedly defaulting party has filed a responsive Answer or other pleading, prior to an entry of Default Judgment."  *Semler v. Klang*, 603 F. Supp. 2d 1211, 1218-19 (D. Minn. 2009) (citing *Johnson v. Allied Interstate Inc.*, No. Civ. 02-910 (RHKAJB), 2002 WL 1906024, at *2 (D. Minn. Aug. 19, 2002)).

Entry of default judgment is not warranted where a defendant has not been properly served.  *See Burns v. Office of Attorney Gen.*, No. 08-CV-0858

(PJS/RLE), 2007 WL 2247600, at *5 (D. Minn. Aug. 2, 2007) ("To enter a default

judgment, a court must have jurisdiction over the defaulting party, and the

defendant must have been made party to the action by proper service of

process."); *see also Brown v. Wachovia Bank*, 244 F.R.D. 16, 20 (D.D.C. 2007)

(finding no basis for an entry of default against a defendant who had not been

properly served).  Further, "[n]o judgment of default shall be entered by a court of

the United States . . . against a foreign state, a political subdivision thereof, or an

agency or instrumentality of a foreign state, unless the claimant establishes his

claim or right to relief by evidence satisfactory to the court."  28 U.S.C. § 1608(e).

### B.    Analysis

#### 1.    The Clerk of Court has not entered a default under Rule 55(a) and Defendants Responded to the Complaint

This Court recommends that Plaintiff's motion for default judgment be

denied for several reasons.  First among these reasons is that the Clerk of Court

has not entered a default under Rule 55(a).  *See Johnson*, 140 F.3d at 783

("[E]ntry of default under Rule 55(a) must precede grant of a default judgment

under Rule 55(b).").  Plaintiff argues that the Clerk of Court has entered a default

against Defendants.  (Doc. No. 5 ¶ 4.)  This argument is frivolous.  In support of

this contention, Plaintiff attached his own applications for entry of default, which

he filed on March 24, 2009.  (*See* Doc. No. 5, ¶ 4, Attachs. 2 & 5, originally filed

in this case as Doc. Nos. 7 and 8.)  These submissions are plainly not an entry of

default by the Clerk of Court pursuant to Rule 55(a).  The Clerk of Court has not

entered a default under that Rule and, thus, this Court cannot enter a default judgment against Defendants under Rule 55(b).

Moreover, Defendants have made a limited appearance and have filed a response to Plaintiff's Complaint in the form of a Motion to Dismiss. When a party makes such an appearance indicating an intention to defend against a plaintiff's claims, entry of a judgment of default is improper. *See Semler*, 603 F. Supp. 2d at 1219 ("[B]ecause [the defendant] has demonstrated his intention to defend against the Plaintiff's claims, we recommend that the Plaintiff's Motion for Entry of Default Judgment be denied as without merit.").

### 2. Plaintiff has not established his claim or right to relief by satisfactory evidence

Second, with respect to the Republic of Ghana,[3] Plaintiff has not "establishe[d] his claim or right to relief by evidence satisfactory to the court." *See* 28 U.S.C. § 1608(e) (providing that default against a foreign state or instrumentality thereof may not be entered unless the plaintiff's right to relief is supported by sufficient evidence). The allegations in the Complaint discussed above provide no clear picture of the Republic of Ghana's liability. Nearly all of the allegations in the Complaint relate to the conduct of individuals who are not

---

[3]     Although 28 U.S.C. § 1608(e) only applies to a "foreign state, a political subdivision thereof, or an agency or instrumentality of a foreign state," and thus may not apply to GCB, this Court notes that Plaintiff has not established his right to relief against GCB by any evidence satisfactory to this Court. Therefore, if GCB could be considered an agency or instrumentality of the Republic of Ghana, and § 1608(e) consequently applied to GCB, default judgment against GCB would be inappropriate nonetheless.

named as defendants, are vaguely identified, and have entirely unidentified connections (if any at all) with the Republic of Ghana. This is insufficient to establish Plaintiff's right to relief from The Republic of Ghana. For this reason, with respect to the Republic of Ghana, Plaintiff's motion for default judgment should be denied.

### 3. Plaintiff has not demonstrated that Defendants have been properly served.

Third, Plaintiff has failed to sufficiently demonstrate that Defendants have been properly served. Plaintiff apparently made the following efforts to serve Defendants: (1) he attempted to serve Citibank under 28 U.S.C. § 1608(b)(2) "as the general or managing agent authorized to accept service on behalf of [GCB]" (Doc. No. 11, Pl.'s Resp. to the Order to Show Cause to the Order April 3, 2009 ("Pl.'s Resp.") ¶ 6); (2) he "made use of Minnesota Statu[t]e 303.13 to serve [GCB's] CEO, Mrs. Matilda Obeng-Ansong and Mr. K.G. Osei-Bonsu, the Board Chairman of [GCB] (*id.* ¶ 11); (3) he requested the "court of clerk to send the Summons and Complaint to [GCB's] CEO" (*id.* ¶ 12); (4) he made service on the Republic of Ghana by "special arrangement" arrived at during a meeting "in Mr. Dan Agyeman's office which is part of the Office of the President" (*id.* ¶¶ 16-20); (5) he sent the Summons and Complaint through international registered mail "to Mr. John Kufuor, President on 11/22/2008 with a return receipt[, which] was never received by Plaintiff" (*id.* ¶ 22); and (6) he used "the Minnesota Statute 303.13 on service of the Ministry of Foreign Affairs." (*Id.* ¶ 23.)

### (i)  Service on Defendant Republic of Ghana

Pursuant to Rule of Civil Procedure 4(j), because the Republic of Ghana is a "foreign state," service on that party "must be [made] in accordance with 28 U.S.C. § 1608."  Fed. R. Civ. P. 4(j)(1).  Under § 1608(a)(1), service on a foreign state can be achieved by delivery of the summons and complaint "in accordance with any special arrangement for service between the plaintiff and the foreign state or political subdivision."  If no such special arrangement exists, then § 1608(a)(2) authorizes delivery of a copy of the summons and complaint "in accordance with an applicable international convention on service of judicial documents."  If neither of the methods in paragraphs (a)(1) or (a)(2) can be achieved, a plaintiff may send a copy of the summons and complaint and a notice of suit—along with a translation of each into the foreign state's official language—"by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of court to the head of the ministry of foreign affairs of the foreign state concerned."  § 1608(a)(3).  Finally, if service under paragraph (a)(3) cannot be made within 30 days, a plaintiff can request that the clerk of court dispatch two copies of the summons and complaint and a notice of suit—along with a translation of each into the foreign state's official language—to the Secretary of State, who then "shall transmit one copy of the papers through diplomatic channels to the foreign state and shall send to the clerk of the court a certified copy of the diplomatic note indicating when the papers were transmitted."  § 1608(a)(4).  These four methods for serving legal process on a

foreign state are arranged "in descending order of preference—meaning that a plaintiff must attempt service by the first method (or determine that it is unavailable) before proceeding to the second method, and so on." *Abur v. Republic of Sudan*, 437 F. Supp. 2d 166, 172 (D.D.C. 2006).

First, Plaintiff's contention that he had a special arrangement with the Republic of Ghana for service under 28 U.S.C. § 1608(a)(1) is not supported by the record. Second, § 1608(a)(2) does not apply because there is no international convention on service of judicial documents between the Republic of Ghana and the United States. *See generally* Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 243. Third, Plaintiff has not demonstrated compliance with the method of service provided in 28 U.S.C. § 1608(a)(3). Plaintiff indicates no efforts made to serve the Republic of Ghana by sending a copy of the Summons and Complaint and a "notice of suit,"[4] along with a translation of each into the official language of Ghana by a form of mail requiring a return receipt. *See* 28 U.S.C. § 1608(a)(3). As noted above, Plaintiff asserts that he sent a copy of the Summons and Complaint in compliance with the Minnesota State long-arm statute to the Ministry of Foreign Affairs, but this is not a method of service authorized under § 1608(a)(3). Further, there is no

---

[4] The "notice of suit" is "a notice addressed to a foreign state and in a form prescribed by the Secretary of State by regulation." 28 U.S.C. § 1608(a). The form for this notice is provided in 22 C.F.R. § 93.2.

indication in the record that the Clerk of Court dispatched such documents to the head of Ghana's Ministry of Foreign Affairs as required by that section. (*See* Doc. No. 3.)

Finally, Plaintiff has not shown compliance with the method of service authorized by 28 U.S.C. § 1608(a)(4). That section requires that a plaintiff send two copes of the summons and complaint and a notice of suit, along with a translation of each, by a form of mail requiring a return receipt, to be addressed and dispatched by the clerk of court to the Secretary of State in Washington, District of Columbia. § 1608(a)(4). The Secretary of State then must transmit the papers through diplomatic channels to the foreign state and provide the clerk of court with a note indicating that the papers were transmitted. *See id.* Plaintiff has made no showing that service was made pursuant to this procedure, nor has he indicated that compliance with this procedure was even attempted.

Thus, Plaintiff has failed to comply with service on the Republic of Ghana under 28 U.S.C. § 1608, and, consequently, an entry of a judgment of default against the Republic of Ghana is inappropriate.

### (iii)    Service on Defendant Ghana Commercial Bank

GCB is a foreign corporation, and service upon it at a place not within any judicial district of the United States must be made "in any manner prescribed by Rule 4(f), except personal delivery under (f)(2)(C)(i)." Fed. R. Civ. P. 4(h)(2). Here, Rule 4(f)(1) does not apply because there is no applicable treaty for service of process between the United States and Ghana. Nor has Plaintiff

followed the procedures for service under Rule 4(f)(2), which permits service as prescribed by the foreign country's law for service in that country, as the foreign country directs in a letter rogatory or letter of request, or using any form of mail that the clerk addresses and sends to the corporation and requires a signed receipt.

Plaintiff has asserted that he attempted service of process on GCB pursuant to 28 U.S.C. § 1608(b), which governs service on agencies and instrumentalities of foreign states. (*See* Pl.'s Resp. ¶¶ 2-14.) However, even assuming without deciding that § 1608(b) applies to service on GCB as an agent or instrumentality of a foreign state, nothing before this Court suggests that service was appropriately made pursuant to that statute. This Court has no evidence of a special arrangement between GCB and Plaintiff for service. *See* § 1608(b)(1). In addition, Plaintiff does not appear to have served an officer, a managing or general agent, or any other agent authorized to receive service for GCB in the United States. *See* § 1608(b)(2). As noted above, Plaintiff argues that Citibank is the authorized agent to accept service for GCB in the United States, but he provides no support for this assertion. Rather, he acknowledges that Citibank denies it is GCB's agent for service. (Pl.'s Resp. ¶ 7.) Further, Plaintiff has not shown that he delivered a copy of the Summons and Complaint together with a translation of each into Ghana's official language in the manner required by § 1608(b)(3). Thus, this Court concludes that Plaintiff has failed to

effect proper service on GCB and his motion for default judgment should be denied for this reason as well.[5]

## III.    Motion to Dismiss

Defendants seek dismissal of this action based on the following grounds: (1) lack of personal jurisdiction; (2) lack of subject-matter jurisdiction based on the Foreign Sovereign Immunities Act; (3) forum non-conveniens; (4) principles of international comity; and (5) failure to state a claim.  Because this Court concludes that this action should be dismissed with prejudice for lack of personal jurisdiction, it declines to reach the alternative grounds raised by Defendants.

Defendants' argument that this case be dismissed for lack of personal jurisdiction is premised on the assertion that neither GCB nor the Republic of Ghana have sufficient contacts with the State of Minnesota for this Court to exercise jurisdiction over them.[6]  To survive a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), a plaintiff must establish a prima facie case that the forum state has personal

---

[5]     Plaintiff appears to request that this Court direct, by order, the manner for service to be made, but this Court declines to do so because it further recommends that Defendants' Motion to Dismiss be granted and this matter be dismissed with prejudice.

[6]     Defendants also argue that this issue requires no new analysis because Plaintiff is barred from relitigating the issue of personal jurisdiction on the ground of collateral estoppel.  As mentioned above, Plaintiff initially filed a substantially similar action to this one in March 2007, which was dismissed without prejudice due to lack of personal jurisdiction.  *See* discussion, *supra*, at n.1.  However, because that dismissal was without prejudice, this Court declines to consider the matter of whether Plaintiff is precluded from litigating that issue here.

jurisdiction over the defendant. *See Stevens v. Redwing*, 146 F.3d 538, 543 (8th Cir. 1998). In the absence of an evidentiary hearing, a court "must look at facts in the light most favorable to the nonmoving party and resolve all factual conflicts in favor of that party." *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991) (citations omitted). A federal court may assume jurisdiction over a nonresident defendant (such as Defendants in this case), "only to the extent permitted by the long-arm statute of the forum state and by the Due Process Clause." *Romak USA, Inc. v. Rich*, 384 F.3d 979, 984 (8th Cir. 2004) (quotations omitted). Because the Minnesota long-arm statute "confers jurisdiction to the fullest extent permitted by the Due Process Clause," this Court need only consider due process requirements. *Coen v. Coen*, 509 F.3d 900, 905 (8th Cir. 2007) (citation omitted).

To satisfy due process, a defendant must have "sufficient minimum contacts" with the forum state such that maintaining the suit "does not offend traditional notions of fair play and substantial justice." *Romak*, 384 F.3d at 984. "Sufficient contacts exist when [a] defendant's conduct and connection with the forum state are such that [it] should reasonably anticipate being haled into court there." *Coen*, 509 F.3d at 905 (citation and quotation omitted). A defendant should reasonably anticipate being haled into court in a forum state within which it "purposefully avail[ed] [it]self of the privilege of conducting activities, . . . thus invoking the benefits and protections of [the state's] laws." *Id.* (citation omitted).

There are two types of personal jurisdiction, general and specific. "When a cause of action arises out of or is related to a defendant's contacts with the forum state, the exercise of personal jurisdiction is one of specific jurisdiction." *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 648 (8th Cir. 2003). "However, if the exercise of jurisdiction does not depend on the relationship between the cause of action and the defendant's contacts with the forum state, the exercise of personal jurisdiction is one of general jurisdiction." *Id.* General jurisdiction exists when a defendant has "contacts with the state [that] are continuous and systematic." *Id.*

Under either a general or specific personal-jurisdiction analysis, a court considers five factors to measure minimum contacts: "(1) the nature and quality of a defendant's contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties." *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1073-74 (8th Cir. 2004). A court gives significant weight to the first three factors. *See id.*

In his Complaint, Plaintiff included allegations purporting to demonstrate the appropriateness of personal jurisdiction in the District of Minnesota over Defendants. (Doc. No. 1, ¶¶ 5-9.) In support of this contention, Plaintiff alleged that "trade between the [S]tate of Minnesota and the country of Ghana amount[s] to 5.5 million dollars in 2007, 8.4 million dollars in 2006, 11.2 million dollars in 2005, 9.5 million dollars in 2004, 6.1 million dollars in 2003, and 4 million dollars in 2002, and 2008 year-to-date 3.1 million dollars[.]" (*Id.* ¶ 7.) He generally

repeated this basis for personal jurisdiction in his response to Defendants motion to dismiss. (*See* Doc. No. 31, Pl.'s Resp. to Def.'s Mot. to Dismiss ("Pl.'s Personal Jurisdiction Resp.") ¶¶ 6-9.) Further, he alleged that Ghanaian contacts exist with the State of Minnesota because individuals—though not the named Defendants—involved in business transactions making up Minnesota-Ghana trade would have had to use real property in Minnesota when discussing financial arrangements with banks. (*Id.* ¶ 8.) Plaintiff also alleges that because Defendants are "illegally holding onto [his] assets, plaintiff was forced to file for bankruptcy in Minnesota[,]" thus establishing that Defendants availed themselves of the forum state. (*Id.* ¶ 9.)

Even taking the facts as presented by Plaintiff in the light most favorable to him, Plaintiff has failed to demonstrate that either of the Defendants have sufficient minimum contacts with the forum state. Plaintiff's reference to trade statistics and his submission of a statistical report regarding Minnesota-Ghana trade say nothing about the particular Defendants he has sued in this action. Plaintiff has provided no evidence from which this Court could conclude that the Republic of Ghana or GCB has any contacts or business dealings within the State of Minnesota. Specifically, the trade statistics Plaintiff submitted do not identify what the Republic of Ghana or GCB themselves did to avail themselves of the privileges of conducting activities in the forum. The only evidence before the Court regarding a relationship between the particular Defendants in this matter and the State has been presented by Defendants. Defendants have

indicated that neither the Republic of Ghana nor GCB has any contacts with the State. (Doc. No. 23, Decl. of the Republic of Ghana's Solicitor General ("Republic of Ghana Decl.") ¶ 13; Doc. No. 24, Decl. of Ghana Commercial Bank Limited ("GCB Decl.") ¶ 6.) Having reviewed the record in light of the factors this Court must consider when determining whether the exercise of personal jurisdiction is appropriate, this Court concludes that Plaintiff has failed to establish that any contacts exist between Defendants and the forum. Plaintiff also has failed to establish any relation between Defendants' purported contacts with the forum and the cause of action in this case. Therefore, neither general nor specific personal jurisdiction is appropriate here, and this Court recommends that Defendants' Motion to Dismiss be granted and this action be dismissed with prejudice.

## ORDER AND RECOMMENDATION

Based on the file, and all the records and proceedings therein, **IT IS HEREBY ORDERED** that:

1.      Plaintiff's Motion to Disqualify Opposing Counsel (Doc. No. 30), is **DENIED**; and

2.      Plaintiff's Motion to Include Evidence to Disqualify Opposing Counsel (Doc. No. 47), is **DENIED**.

For the reasons stated, **IT IS HEREBY RECOMMENDED** that:

1.      Plaintiff's Motion [for] Entry of Default and Default Judgment (Doc. No. 5), be **DENIED**;

2.      Defendant's Motion to Dismiss (Doc. No. 19), be **GRANTED**; and

3.      Plaintiff's Complaint (Doc. No. 1), be **DISMISSED WITH**

**PREJUDICE**.

Date: July 22, 2009

                                                    _s/ Jeffrey J. Keyes_
                                                    JEFFREY J. KEYES
                                                    United States Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **August 5, 2009**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within ten days after service thereof.  A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.